UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| STACI HARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:16-cv-00129-JMS-MJD |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Staci Harrington requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act").[1]  See 42 U.S.C. §§ 416(i), 423(d).  For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** the decision of the Commissioner and **REMAND** the matter for proceedings consistent with this opinion.

**I. Background**

Harrington filed her application for DIB in May 2013, alleging April 16, 2013 as the onset date of disability.  [Dkt. 13-5 at 4 (R. 142).]  In her disability report filed in conjunction with her application, Harrington listed a broken back as her disabling condition.[2]  [Dkt. 13-6 at 2

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[2] Harrington recited the relevant factual and medical background in her opening brief.  [See Dkt. 17.]  The Commissioner, unless otherwise noted herein, does not dispute these facts.  [See Dkt. 22.]  Because these facts

1

(R. 157).] Harrington's application was denied initially on June 24, 2013, [Dkt. 13-4 at 2 (R. 79)], and upon reconsideration on September 30, 2013, [Dkt. 13-4 at 9 (R. 86)]. Harington timely requested a hearing on her application, which was held before Administrative Law Judge Kevin R. Martin ("ALJ") on November 4, 2014. [Dkt. 13-2 at 30 (R. 29).] The ALJ issued his decision on December 4, 2014, again denying Harrington's application for DIB. [Dkt. 13-2 at 12 (R. 11-13).] On February 12, 2016 the Appeals Council denied Harrington's request to review the ALJ's decision, making it the final decision of the Commissioner for the purposes of judicial review. [Dkt. 13-2 at 2-4 (R. 1-4).] Harrington timely filed her Complaint with this Court on April 18, 2016, seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II.  Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, or one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is

---

involve Harrington's sensitive and otherwise confidential medical information, the Court will incorporate by reference the factual background the parties' briefs and articulate specific facts as needed below.

not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176. The scope of review is confined to the rationale offered by the ALJ. See *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III. The ALJ's Decision

In his decision, the ALJ first determined that Harrington met the insured status requirements of the Act through December 31, 2017 and had not engaged in substantial gainful activity since April 16, 2013. [Dkt. 13-2 at 17 (R. 16).] At step two, the ALJ found Harrington's severe impairments to include "[d]egenerative disc disease of the lumbar spine, status-post laminectomy at L5-S1; obesity, asthma with the use of oxygen at night; mood disorder; depressive disorder; and anxiety." [*Id.* (citation omitted)] At step three the ALJ found that Harrington did not have an impairment or combination of impairments that meets or medically equals a Listing and evaluated Listing 3.03 for asthma and Listings 12.04 and 12.06 for affective and anxiety related disorders. [*Id.*]

Before step four, "after careful consideration of the entire record," the ALJ determined that Harrington had the RFC to perform light work with additional restrictions. [Dkt. 13-2 at 19 (R. 18).] Specifically, the ALJ found the following:

> [Harrington] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but she could never climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to respiratory irritants, such as fumes, odors, dusts, gases, and poor ventilation; and she is limited to being able to understand, remember, and carry out simple instructions in a work setting requiring no more than occasional interaction with coworkers, supervisors, and the public.

[*Id.*] At step four, the ALJ found that Harrington had no past relevant work. [Dkt. 13-2 at 23 (R. 22).] After considering Harrington's age, education, work experience, and RFC, the ALJ found that Harrington could perform several jobs that existed in significant numbers in the national economy. [Dkt. 13-2 at 24 (R. 23).] These jobs included laundry worker, mail clerk, and hotel cleaner. [*Id.*] Based on these findings, the ALJ concluded Harrington was not disabled under the Act. [*Id.*]

4

## IV. Discussion

Harrington makes several arguments as to why the ALJ's decision must be reversed, challenging the step three determination, mental RFC determination, physical RFC determination, and the Appeals Council's decision not to associate certain evidence with the certified administrative record. Because the Court finds that the ALJ committed reversible error at step three, the Court addresses that issue first before addressing other issues that should be considered on remand.

### A. Step Three Determination

Harrington maintains that the ALJ erred in not finding her disabled at step three. Harrington argues that she meets the "B" criteria of Listing 12.04 for affective disorders and Listing 12.06 for anxiety related disorders. Harrington asserts two distinct arguments as to why the ALJ's step three determination requires reversal, arguing that the ALJ improperly found a lack of medical equivalence without considering a consultative examiner's report[3] and that the ALJ overlooked a bevy of medical evidence that she contends constitutes "direct evidence showing Plaintiff is much more limited than the ALJ found." [Dkt. 17 at 29.]

The Commissioner does not directly respond to Harrington's argument that the ALJ was required to consider a consultative examiner's report in order to make the medical equivalency determination, instead generally arguing that "Plaintiff has not shown that further medical expert evaluations would lead to a different conclusion on the impact of her impairments on functional capacity." [Dkt. 22 at 14.] The Commissioner further argues that the ALJ properly assessed the medical evidence in determining that Harrington did not satisfy any Listing.

---

[3] Harrington confusingly makes this argument as part of her challenge to the ALJ's mental RFC finding, even though medical equivalence is part of the step three determination. 20 C.F.R. § 404.1520(a)(4)(iii). The Court addresses this argument, which is otherwise developed and fairly presented for review, in the appropriate section pertaining to step three.

5

In reply, Harrington acknowledges her general burden to provide evidence of disability but reiterates her argument that the regulations require the ALJ to consider a consultative examiner at step three.

The ALJ considered Listing 12.04 and Listing 12.06 and determined that Harrington did not satisfy either listing because she failed to satisfy at least two "B" criteria. To satisfy either listing, a claimant must satisfy two of the following "B" criteria: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B, 12.06B. The ALJ further determined that Harrington's impairments did not medically equal either Listing.

While the step-three determination of whether a listing is met or equaled is an "ultimate legal question" left to the ALJ and which must be affirmed if supported by substantial evidence, Social Security regulations require the ALJ to consider the opinion of an expert in making the medical equivalency determination. S.S.R. 96-6P, 1996 WL 374180; *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."); 20 C.F.R. § 404.1526 ("We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner."). This, at a minimum, requires the ALJ to consider a medical consultant's assessment of the record evidence, usually in the form of a disability determination form. *Compare, e.g.*, *Barnett*, 381 F.3d at 670, *with McKee v. Colvin*, No. 1:15-CV-01371-TAB-WTL, 2016 WL 3679702, at *4 (S.D. Ind. July 12, 2016) ("In *Barnett*, the court pointed out the ALJ did not consult an expert, but notably, no state agency medical consultant made an

6

assessment. The *Barnett* court found error because the ALJ assumed the impairments had no medical equivalence without any supporting evidence or discussion . . . ." (internal citation omitted)), *Pavely v. Colvin*, No. 1:14-CV-01890-SEB-MJD, 2015 WL 7176139, at *5 (S.D. Ind. Nov. 9, 2015) ("[T]he ALJ in *Barnett* did not consult a medical expert at all or rely on a signed Disability Determination."), *and Jordan v. Colvin*, No. 1:13-CV-01817-JMS-DKL, 2014 WL 4329485, at *5 (S.D. Ind. Sept. 2, 2014) ("An ALJ's reliance on disability forms filled out by state agency physicians satisfies the ALJ's duty to consider an expert's opinion on medical equivalence." (internal quotation and alteration omitted)).

The Commissioner does not identify any consultative report or other expert opinion evaluating Harrington's mental limitations and the Court likewise cannot locate one in the record. Indeed, the only Disability Determination forms in the record address Harrington's physical limitations and suggest restrictions for her physical RFC. [Dkt. 13-3 (R. 62-78).] Wholly missing is any Disability Determination form or any other expert assessment of Harrington's mental limitations or mental RFC, despite the ALJ's consideration of the listings for mental disorders and his findings of moderate difficulties in social functioning and concentration, persistence, or pace. [*See* Dkt. 13-2 at 19 (R. 18).]

The Court agrees with the Commissioner that it is generally the claimant's burden to provide evidence of disability—particularly where, as here, the claimant is represented. *See, e.g.*, *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits."). This principle is inapplicable, however, when the particular evidence lacking must be provided by a "psychological consultant[] designated by the Commissioner." 20 C.F.R. § 404.1526; *see*

7

*Barnett*, 381 F.3d at 670. The ALJ's failure to consult a Disability Determination form or other expert opinion addressed to Harrington's mental limitations means that the ALJ has failed to support his determination that Harrington did not medically equal a Listing with substantial evidence. *See id.* The Court should therefore reverse the ALJ's disability determination and remand this matter for further proceedings.[4]

### B. Administrative Record

Harrington additionally argues that the Appeals Council erred by not associating rejected evidence with her file, such that the rejected evidence did not reach this Court as part of the certified administrative record. The Appeals Council is required to consider "evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision." 20 CFR § 404.976. Where the Appeals Council rejects the additional evidence, it must give the claimant an explanation and must "[a]ssociate a copy of the evidence in the appropriate section of the file, placing all medical evidence in the F section." HALLEX I-3-5-20(A), 1993 WL 643143. Thus, while rejected evidence is not exhibited, it must be "included in the certified administrative record" for consideration when "the case is appealed to Federal court." *Id.*

---

[4] Harrington asks the Court to find that the evidence is so overwhelming as to only admit of the conclusion that Harrington is disabled pursuant to Listing 12.04 and Listing 12.06 and thus to remand for an award of benefits. The decision to reverse with an order of benefits is left to the district court's sound discretion and is warranted "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

While the ALJ cites to a plethora of evidence supporting his conclusion that Harrington does not **meet** a Listing, the ALJ failed to consider an expert opinion as to whether Harrington **medically equals** a Listing as required by the regulations. Therefore, while remand is required to obtain a Disability Determination form on medical equivalency, the Court cannot conclude that the record only supports the conclusion that Harington was disabled. *See id.* Remand for an award of benefits would be inappropriate in this case.

Generally, the burden is on the claimant asking the Court to remand a case to the Commissioner to consider additional evidence to demonstrate that the new evidence is "material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g)(sentence six). However, as Judge Magnus-Stinson recently pointed out, when evidence submitted to the Appeals Council is rejected, the district court retains jurisdiction to "review the 'limited question' of whether the Council had erroneously concluded that the newly submitted evidence was not new and material." *Barnhill v. Colvin*, No. 1:15-CV-1960-JMS-MJD, 2016 WL 6680358, at *7 (S.D. Ind. Nov. 14, 2016) (quoting *Stepp v. Colvin*, 795 F.3d 711, 722-23 (7th Cir. 2015)).

Unlike a situation in which a claimant moves for remand under sentence six, in this situation, the evidence was submitted to the Social Security Administration but was not transmitted to the Court for review. Determining "whether the Appeals Council's conclusion that they related to a time period after the ALJ's decision was correct" requires that the Appeals Council "associate[] the medical records that it rejected" with the claimant's file.[5] *Id.* As explained in *Barnhill*, the regulations place the burden on the Commissioner to ensure that the complete administrative record is before the Court. *Id.* The Court should therefore order the Commissioner to make the rejected medical records part of the certified record on remand.[6] *See id.*

---

[5] The Commissioner could have sought to remedy the failure to include the relevant records by moving to supplement the record with the omitted documents. Such was not done here. Instead, the Commissioner argued that the failure to include the records was harmless error. [*See* Dkt. 22 at 18-22.] It is, of course, impossible for the Court to determine whether the error was harmless without being able to review the documents at issue.

[6] Because the Court determines that remand is required at step three, it need not address Harrington's remaining arguments.

## V. Conclusion

For the aforementioned reasons, the Court should find that substantial evidence does not support the ALJ's determination that Harrington is not disabled. The District Judge should therefore **REVERSE** and **REMAND** the matter to the Social Security Administration for further proceedings. The Court should further **ORDER** the Commissioner to make part of the certified administrative record the medical records Harrington submitted to the Appeals Council and the Appeals Council rejected.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 21 NOV 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.